1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                          MIAMI DIVISION
3                Case No. 09-CV-23144-GOLD/GOODMAN
4
     PODHURST ORSECK, P.A.,
5
6
                          Plaintiff
7    vs.                                    MIAMI, FLORIDA
                                            OCTOBER 31, 2011
8
9    SERVICES LEGALES De MESOAMERICA
     S. De R.L., WILFREDO GARCIA, MARIA
10   GARCIA, THE LAW FUNDER, LLC, et al.,
11
                       Defendants.
12
13              HEARING TRANSCRIPT ON ORAL ARGUMENT
                BEFORE THE HONORABLE JONATHAN GOODMAN,
14                 UNITED STATES MAGISTRATE JUDGE
15   APPEARANCES:
16
     FOR THE PLAINTIFF:
17
18                              PODHURST ORSECK, P.A.
                                City National Bank Building
19                              25 West Flagler Street
                                Suite 800
20                              Miami, Florida 33131
                                BY: ROBERT C. JOSEFBERG, ESQ.
21                              BY: STEVEN C. MARKS, ESQ.
                                BY: ALEXANDER RUNDLET, ESQ.
22
23
24   REPORTED BY:               J.M. COURT REPORTING, INC.
                                JERALD M. MEYERS, RPR.
25                              Telephone:  954-431-4757

1

2

3

4        FOR THE DEFENDANTS:

5

6

7

8                                    BY: PETER M. FEAMAN, ESQ.
                                     3615 W. Boynton Beach Boulevard
9                                    Boynton Beach, Florida 33436 Floor

10

11

12

13

14
                                     UNTIED STATES DEPARTMENT OF JUSTICE
15                                   TAX DIVISON
                                     Southwest Civil Trial Section
16                                   Suite 400
                                     Dallas, Texas 75201
17                                   BY: HERBERT W. LINDER, ESQ.

18

19

20

21                                   BY: JOHN E. PHELAN, ESQ.
                                     100 S.E. 2nd Street
22                                   Suite 3600
                                     Miami, Florida 33131
23

24

25

```
 1

 2                                KITTLEMAN, THOMAS & GONZALEZ
                                 4900-B NORTH 10th Street
 3                               McAllen, Texas 78504
                                 BY: REBECCA VELA, ESQ.
 4

 5

 6

 7

 8

 9                                SINCLAIR LOUIS HEATH NUSSBAUM &
                                 ZAVERTNIK
10                               Alfred I DuPont Building
                                 169 E. Flagler Street
11                               Suite 1125
                                 Miami, Florida 33131
12                               BY: MARSHALL D. LOUIS, ESQ.

13

14

15

16
                                 BY:  NEWTON B. SWARTZ, ESQ.
17                               1911 Southwest Freeway
                                 Houston, Texas 77098
18

19

20

21

22  REPORTED BY:                 JERALD M. MEYERS, RPR.
                                 J.M. COURT REPORTING, INC.
23                               1601 N.W. 109TH TERRACE
                                 Pembroke Pines, FL 33026-2717
24
                                 Telephone: 954-431-4757
25                               E-Mail Address: CRJM@AOL.COM
```

4

```
 1    (Call to order of the Court)

 2            THE CLERK:  All rise.  United States District Court

 3    for the Southern District of Florida is now in session; The

 4    Honorable Jonathan Goodman presiding.

 5            THE COURT:  All right.  Good afternoon, folks.  Make

 6    yourselves comfortable.  Please sit down.

 7            THE CLERK:  Calling case 09-23144-Civil-Gold, Podhurst

 8    Orseck P.A. versus Servicios Legales De Mesoamerica S. De R.L.,

 9    et al.

10            THE COURT:  Well, we have a full house here, folks,

11    and so if everybody would just state your appearances for the

12    record, starting first with the plaintiff, I would appreciate

13    that, and happy Halloween to everybody as well.

14            MR. JOSEFSBERG:  Good afternoon, Your Honor.  Alex

15    Rundlet, Steve Marks and Bob Josefsberg for Podhurst Orseck.

16            THE COURT:  All right.  And who is here other than

17    yourself, Mr. Josefsberg?

18            MR. MARKS:  Steve Marks.

19            THE COURT:  Thank you.

20            MR. JOSEFSBERG:  Steve Marks and Alex Rundlet.

21            THE COURT:  Thank you.

22            MR. JOSEFSBERG:  Alex is the handsome one.

23            THE COURT:  All right.  I will take that into

24    consideration.

25            MR. LOUIS:  Good afternoon, Your Honor.  Dore Louis.
```

1    I am here on behalf of Masry & Vititoe, James Vititoe, David

2    Kukhalashvilli and Tamara Kukhalashvilli.

3            THE COURT:  All right.  Thank you.  Over here.

4            MR. PHELAN:  Good afternoon, Your Honor.  John Phelan

5    representing the 3 receivers, Sephulveda, Flanagan and Callagy.

6            I am local counsel for them, and with me is Rebecca

7    Vela.

8            MS. VELA:  Rebecca Vela.  I am also representing the

9    receivers.  I am the Texas counsel.  I was admitted pro hac

10   vice in this matter.

11           THE COURT:  All right.  And where in Texas are you

12   from?

13           MS. VELA:  I am from McAllen, Texas.

14           THE COURT:  I have heard of it.  At least I have now

15   as of this case.  All right.  Well, welcome.

16           MS. VELA:  Thank you.

17           MR. LINDER:  Good afternoon, Your Honor.  Herb Linder

18   on behalf of the United States.

19           THE COURT:  And you are from Texas as well?

20           MR. LINDER:  From Dallas, Your Honor.  That's correct.

21           THE COURT:  I have heard of it.  Okay.

22           MR. FEAMAN:  Peter Feaman on behalf of Law Funders,

23   one of claimants to the funds at issue, and I am from Palm

24   Beach County.

25           THE COURT:  All right.  Well, welcome.

1          MR. FEAMAN:  Thank you.

2          THE COURT:  Anyone else?

3          MR. SWARTZ:  Paul Swartz for myself and for Kemper

4     Swartz of Texas.  We are a claimant, and we are a judgment

5     holder along with the United States for the entire amount of

6     the funds that are at issue here.  It is the whole $807,000.

7          THE COURT:  Yes, sir.  You are more than welcome to

8     roll a chair up to one of the counsel tables.

9          MR. SWARTZ:  Well, I am sort of adverse, Your Honor,

10    except for Mr. Linder.

11         THE COURT:  Right.  Well, I will be able to sort of

12    mentally keep in mind the mere fact that you are sitting in a

13    chair doesn't mean that you are agreeing with everything that

14    they are saying.  So come on up.

15         MR. SWARTZ:  I was here in two hearings in February of

16    last year where I sat in different positions.

17         THE COURT:  I saw that from the transcript, and I saw

18    that Judge Gold didn't recall exactly where you sat at each

19    hearing, but hopefully you will sit any place that will work.

20         MR. PHELAN:  If he sits next to me, I promise I will

21    not bite.

22         THE COURT:  All right, folks.  We are here on

23    plaintiff's motion for an order to show cause, docket entry

24    122, the United States' motion for disbursement of funds,

25    docket entry 125.

1          And although it has not been noticed for hearing

2    today, there is an additional motion that has now been referred

3    to me by Judge Gold which is your motion, Mr. Swartz, for leave

4    to file an amended claim.  That's docket entry 136 which has

5    now been referred to me.

6          MR. SWARTZ:  Your Honor, technically it is a

7    supplemental.  Under the federal rules, it was just one date

8    last year, and it has been a year and a half since my last

9    filing here, but it was, in the alternative, to amend our

10   supplement.

11         THE COURT:  All right.  Thank you, sir.  I appreciate

12   the clarification.

13         I have read the papers at issue here and also some of

14   the background information, but let me just ask a couple of

15   clarifying questions, if I can.

16         The other day we had received a motion for continuance

17   from the Law Funder advising that all of the claims at issue in

18   the motion have been resolved, settled or withdrawn, and that

19   was a pleading submitted, Mr. Feaman, by you.

20         So is that, in fact, an accurate update?  Have all of

21   the issues which are at issue here today no longer applicable

22   because they have all been resolved?  Is that true?

23         MR. FEAMAN:  No, Your Honor.  That was based on

24   misinformation that was provided to me by my client.

25         THE COURT:  All right.  Well, I appreciate the

1    clarification.

2           MR. FEAMAN:  Yes, sir.

3           THE COURT:  And I see that you have added the phrase,

4    "Upon information and belief."  So I took that to mean perhaps

5    you were not 100 percent sure.

6           MR. FEAMAN:  That is correct, Your Honor.

7           THE COURT:  Okay.  So these issues are, in fact,

8    pending.

9           What about the fact that apparently the parties are

10   negotiating a global resolution of all claims?  Has there been

11   a global resolution?

12          MR. SWARTZ:  Your Honor, if I may speak.  My two hour

13   flight was delayed this morning.  I was on the phone with all

14   of the parties involved.  And, again, when I landed 30, 40

15   minutes ago, the biggest sticking point as of 30 minutes ago

16   was that Mr. James Vititoe has not been contacted by his Texas

17   counsel or his Miami counsel to approve this final settlement

18   offer which was circulated Friday night.

19          There was a deadline of 8:00 o'clock, and Mr. Smiken,

20   who is Mr. Callagy's counsel, confirmed when I talked to him

21   this morning two hours ago before taking the call that they

22   were submitting it to their Law Funders, and so we have a

23   failure of resolution on both ends, Law Funders and

24   Mr. Vititoe.

25          Actually, his counsel Mr. Louis speaks for four

1  parties to this case, James Vititoe, the Masry & Vititoe law

2  firm and the two Russian counsel who Mr. Marks can attest

3  better than I can their role, and I will not attempt to

4  pronounce their names.

5          THE COURT:  All right.  You know, just do me one

6  favor.  When you speak, come up to the podium and use the

7  microphone because the digital recorder will have an easier

8  time picking up your comments if you speak directly into the

9  microphone.

10          The other counsel who are at the table have

11  microphones directly in front of them, and those microphones

12  will pick up what they have to say, but there is no microphone

13  in front of that red chair there.

14          MR. SWARTZ:  Do you want me to repeat it all?

15          THE COURT:  No.  I think we have got it, but if you

16  have anything additional to add, you can come up to the podium.

17          MR. SWARTZ:  I wasn't aware that it was not picking it

18  up.

19          THE COURT:  I don't know whether it has picked it up

20  or not.  We will find out later when we attempt to transcribe

21  it.

22          MR. SWARTZ:  Thank you, Your Honor.

23          THE COURT:  All right.  So do I hear you saying that

24  there is a perspective global resolution with a draft of a

25  settlement agreement which has been circulating which, if

1  signed, would put to end all of the issues both here and in

2  Texas?

3          MR. SWARTZ:  Without speaking for Mr. Marks, he and I

4  have an agreement as of this morning, and he can speak for

5  himself, but I understand he has begrudgingly approved it, and

6  I will leave out the "begrudgingly" in there.

7          THE COURT:  Well, let's try to go forward with the

8  hearing without using those sort of editorial adjectives.

9          MR. SWARTZ:  Thank you, Your Honor.  I apologize.

10          THE COURT:  All right.  So if that is resolved between

11  you and Mr. Marks, then all of the issues between you and the

12  Podhurst firm, both here and in Texas, will be resolved.

13          Is that my understanding?  Is that correct?

14          MR. SWARTZ:  Yes, Your Honor.

15          THE COURT:  Mr. Marks?

16          MR. MARKS:  Yes, Your Honor, but it is, of course,

17  contingent upon the other parties.

18          So we do not have a deal, absent an agreement from

19  everybody.  We cannot, although we would like to, but we cannot

20  partially settle just with Mr. Swartz, and I think Mr. Swartz

21  probably feels the same way.

22          MR. SWARTZ:  And that is correct, Your Honor.  It

23  takes four in this case.  Four parties.

24          MR. MARKS:  And my feeling, having known Mr. Vititoe

25  for many, many years, and we have worked together and we are

1  friends as well as colleagues, my feeling is that Mr. Vititoe

2  will eventually agree if we can reach him.

3       He travels a lot.  He just came back from China.  I

4  spoke to him before he left.  I knew it was going to be tight,

5  so I don't think there is any desire on his part to be

6  difficult.

7       I just think Mr. Vititoe has been just out of pocket

8  and they cannot get instructions from him.  I don't foresee him

9  being the problem.

10      I think the only real issue, and I don't think the

11  government has an issue here because we don't contest anything

12  with the government's claim.  They get whatever they get.

13      They always are prior to everybody else.  They can

14  take their money and go, and this is really a dispute between

15  law Funder and the receivers and us.

16      Mr. Swartz and Mr. Vititoe are dragged along into that

17  dispute, but our dispute is really with the receivers and Law

18  Funder.

19      THE COURT:  All right.  Let me hear from the

20  government.

21      By the way, counsel, I appreciate the fact that you

22  are standing up, and if you feel more comfortable standing up,

23  that's fine, but you need not do that.

24      You can remain seated.  And if you do, you can lower

25  the microphone so that it picks you up.  If you are an old

1  school kind of lawyer and you feel more comfortable standing

2  up, that's fine.

3          MR. LINDER:  I am sorry, Your Honor.  Thank you, Your

4  Honor.  I am more old school.  I think it would bother me if I

5  sat down.

6          Your Honor, I think Mr. Marks is pretty clear on that.

7  The United States is not part of any of this settlement.

8          The United States' position is that the court in Texas

9  has jurisdiction over this case.  It ordered a distribution to

10  the United States of 307,000.

11         Our opinion is that the interpled funds did not get

12  transferred due to oversight or a ministerial act by the Clerk

13  of The Courts.

14         We have not wanted to sue the Clerk Of The Courts here

15  in Florida for not honoring the court's order.  It has been a

16  very contested issue with us and the clerk.

17         It probably does not need to involve anybody else in

18  the room, but because we felt the clerk should have honored the

19  order distributing the funds to the United States, I know there

20  was a response to our distribution, but in response to that is

21  the 5th Circuit law and the 11th Circuit law is very clear,

22  which is that no party can get attorneys' fees or costs or even

23  sanctions out of funds that are impressed by the United States

24  liens, and I can provide that case to the court if you would

25  like.

1        THE COURT:  Is there anybody who disputes that point

2   from the government?

3        MR. JOSEFSBERG:  No.

4        MR. PHELAN:   Nor do we, Your Honor, on behalf of the

5   receivers.

6        THE COURT:  All right.

7        MR. PHELAN:  I also wanted to point out on the record

8   that the receivers have not claimed an interest in these funds

9   at this point, either.

10        THE COURT:  The receivers have not claimed an interest

11   in the funds?

12        MR. PHELAN:  For these claims.

13        THE COURT:  That for some reason still remain here in

14   this court's registry.  All right.

15        MR. LINDER:  And, Your Honor, based on that, we would

16   just like a direction from this court to the Clerk of The

17   Florida District Court honor the District Court's order

18   disbursing the funds to the United States.

19        And, just for clarification, I know the judge in Texas

20   and I know one of the District Judges here in Florida are under

21   the confusion that the District Court system in Florida, the

22   Southern District and the District Courts in Texas are on the

23   same registry system, and they are not.

24        They are actually different registry systems, and I

25   verified this with the clerk.  So while the Texas judge thinks

1    they can issue an order, and it just comes out of the same

2    registry, it is different.  It is a different registry.

3        So, just for the record, Your Honor, I wanted to give

4    you the case cites of the law on this.

5        The 5th Circuit case is Spinks versus Jones.  It is

6    499 F.2d 339, and that was rendered in 1974 when Florida was

7    part of the 5th Circuit, and then the 11th Circuit case on this

8    matter is Katfaris, K-a-t-f-a-r-i-s versus the United States,

9    and that's 684 F.2d 758, and that is an 11th Circuit case from

10   Florida.

11       So we are just seeking an order from this court

12   directing the Clerk of the Court of Florida to honor the

13   court's order and pay over the funds to the United States.  The

14   307,000.

15       MR. LOUIS:  Your Honor, on behalf of the party that

16   filed or provided the funds to the court, we do not object to

17   that portion, the 300 -- Herb, is 307 or 300?

18       MR. LINDER:  307.

19       MR. LOUIS:  Okay.  I remember it.  I thought it was

20   307.  We do not object to that portion of the monies being

21   distributed.

22       In fact, Mr. Linder and I have an agreement that

23   covers not only those sums, but also some other monies that are

24   subject to, they are in our trust account.

25       They are subject to a state judge's decision later

1    this month in Palm Beach County.  Actually, later in November,

2    the end of November dealing with a case where fees are being

3    held up, which is almost in the nature of interpleader, but it

4    is not, and Mr. Linder and I have an agreement on that

5    distribution, and I think all of the parties in this courtroom

6    are aware of that as well.

7            THE COURT:  So I see you are an old style lawyer as

8    well.  Old school.

9            MR. LOUIS:  I know I look so young.

10           THE COURT:  I see.  All right.

11           MR. LINDER:  Your Honor, may I approach?  I have a

12   copy of the order from the District Court in Texas.

13           THE COURT:  I think it was attached to your motion,

14   wasn't it?

15           MR. LINDER:  Yes, sir, it was.

16           THE COURT:  I have read it.

17           MR. LINDER:  It is Government Exhibit A.

18           THE COURT:  Thank you.  I have seen it.

19           MR. LINDER:  Thank you.

20           MR. SWARTZ:  Your Honor, may I be heard briefly?

21           THE COURT:  All right.

22           MR. SWARTZ:  I, likewise, do not oppose the entry of

23   the order.  Judge Crane was of the opinion, and counsel has

24   stated part of it, that all funds have been centralized in all

25   94 districts in the United States for deposit of funds.

1          Evidently he was wrong because of this, or incorrect,

2     I should say, but we have the issue that the United States is

3     not claiming any interest on the funds.  You want just the

4     principal $307,000?

5          MR. LINDER:  We want exactly what the order says, and

6     that's $307,000, Your Honor.

7          THE COURT:  Okay.

8          MR. LINDER:  No more.  No less.

9          MR. SWARTZ:  We also are liable, Your Honor, in our

10    proposed discussions that there are charges of the Clerk,

11    administrative charges against these funds, less the interest

12    earned.

13         The interest is so minuscule now, anyway; in most

14    districts, a half or a quarter of a percent.  That has to be

15    reckoned in on the rest, but not on the IRS.  Not on the United

16    States.  Thank you.

17         THE COURT:  All right.  Well, let me make a couple of

18    observations, if I can, which is when I first got this motion

19    in and it was referred to me, and we started looking at the

20    docket sheet and doing a little bit of research into the file,

21    because it had not been my case beforehand, one of the things

22    that I noticed was, number 1, the case had been transferred to

23    Texas and, number 2, that Judge Gold had closed the case.

24         So I wondered what jurisdiction does the court have

25    anymore to do anything, and that's why I asked you all to brief

1    that issue.

2            So let me just toss out a question because we will

3    talk about it a little bit.

4            Let's put aside the wrinkle that money was left in the

5    court registry.

6            Just as a matter of general law, does anybody disagree

7    with the notion that once a Federal District Court transfers a

8    case to another district court, that the transferring court or

9    the transferor court loses jurisdiction?

10           Does anybody have a problem with that as a basic

11   proposition of law?

12           MR. JOSEFSBERG:  If the order, Your Honor, were

13   limited to merely transferring, we would agree with you.

14           When the order contains other verbiage, the court we

15   believe has the right to enforce its verbiage in a case that

16   has been transferred, but in regard to your very tailored

17   question, we cannot disagree with it, if it was just a

18   transfer.

19           THE COURT:  All right.  I think I know what you are

20   talking about Mr. Josefsberg.  We will get to that in just a

21   minute.

22           MR. JOSEFSBERG:  Okay.

23           THE COURT:  So we are going to take it one step at a

24   time.

25           Step 1 is no extra verbiage.  Just a general vanilla

1    order transferring a case from one district to another.

2            Everybody agrees that once that happens, the original

3    court no longer has jurisdiction.  Does anybody disagree with

4    that?

5            Okay.  By the way, some of the case law we researched

6    talked about the fact that the transfer was effective and the

7    loss of jurisdiction was effective.

8            Once the physical file arrived at the new Clerk's

9    Office, I think that's sort of also an old school notion.  It

10   is now done electronically nowadays, and in the document in

11   this case there is a note that the District Court in Texas

12   electronically received the file.

13           All right.  So everybody agrees with the general

14   proposition of law.

15           Now, let's go to what I believe Mr. Josefsberg was

16   referring to, the so-called extra verbiage, and I believe you

17   are referring to the language in Judge Gold's order talking

18   about the fact that the Podhurst Orseck firm that the transfer

19   was, and I am quoting right now, Mr. Josefsberg, from docket

20   entry 119.

21           It is an order denying pending motions as moot,

22   dismissing counterclaim without prejudice, directing Clerk to

23   transfer action to Southern District of Texas and closing

24   case," and I think if you go to page 2 of that order, this may

25   be the language that you were referring to, but you will tell

1    me.

2         Numbered Paragraph 4 of that order says, and I am

3    quoting, "This order is without prejudice to Podhurst's right

4    to later move for an award of attorneys' fees and costs

5    incurred with the first phase of this interpleader action."

6         MR. JOSEFSBERG:  Your Honor, that is part of what we

7    are relying upon.  There is other verbiage about them not

8    involving us further which also we believe has been broken by

9    them.

10        THE COURT:  Right.  But that other verbiage I don't

11   think relates to the issue of whether the court here still has

12   jurisdiction, or maybe your argument is that it does.

13        MR. JOSEFSBERG:  Our argument is that it does, in that

14   the court stated what our role would be vis-a-vis the rest of

15   the folks that are fighting over that money, and it said that

16   we shall not be harassed or involved further, and what this

17   boils down to is no good deed goes unpunished.

18        THE COURT:  Right.

19        MR. JOSEFSBERG:  We were told and ordered by Judge

20   Gold, "You put the money in."

21        We even at that hearing said, "There is additional

22   money we are putting in," and the Judge said, "Thank you.  The

23   other parties shall not involve you further."

24        That was part of the conditions of the transfer, that

25   we would not be in Texas.  That part of the order we also

1    believe gives us this court jurisdiction to enforce that.

2          THE COURT:  Right.  Let me ask you about that,

3    Mr. Josefsberg, because I saw that in your papers.

4          You made the argument that this court specifically

5    reserved jurisdiction and just so you know what I am talking

6    about here, I am referring to your reply memorandum.

7          It is docket entry 126.  "Plaintiff's reply in support

8    of motion for order to show cause."

9          Take your time.  Let me know when you have gotten to

10   that document.

11         MR. JOSEFSBERG:  Yes, Your Honor.  I will have it in a

12   moment.

13         THE COURT:  All right.  No hurry.

14         MR. JOSEFSBERG:  Yes.  I have it, Your Honor.

15         THE COURT:  All right.  So if you look on page 10 -- I

16   am sorry -- page 2.  Page 2 of 10, on page 2 of that reply you

17   see in the middle of the page the paragraph that says

18   "moreover?"

19         MR. JOSEFSBERG:  Yes.

20         THE COURT:  All right.  It says, "Moreover, the Court

21   specifically reserved jurisdiction over Podhurst's right to

22   seek attorneys' fees arising out of the first phase of the

23   interpleader action in the event Podhurst could not resolve its

24   disputes with claimants."

25         So show me what order you believe specifically

1    reserves jurisdiction to this court?

2            MR. JOSEFSBERG:  Mr. Marks will address that point.

3            THE COURT:  Sure.

4            MR. MARKS:  Your Honor, one of the things that we

5    objected to, and the reason we wanted it so clear with Judge

6    Gold, was that we were afraid we were going to get dragged into

7    a very convoluted web of litigation in Texas, and we didn't

8    think the Texas court had jurisdiction over us, and we were

9    seeking relief here that that could not happen.

10           The judge fashioned his order in a way which

11   essentially dismissed us from the case.  However, reserved

12   jurisdiction if we  --

13           THE COURT:  Okay.  That is the phrase I want you to

14   focus on.  Show me where the court reserved jurisdiction to

15   itself.

16           MR. MARKS:  No, it does not say that, but I will tell

17   you the background as to what was clearly intended.

18           We at that hearing said, "We are not subject to

19   jurisdiction in Texas."

20           I think even Mr. Swartz made a comment that he tended

21   to agree with us at that hearing.  And, in fact, what happened

22   was we did end up in litigation in Texas.

23           They continued to proceed in the case that was

24   removed, a divorce proceeding which had been removed where

25   receivers were appointed in the divorce proceedings to gather

1    assets for the participants of the divorce.

2          Those receivers then brought claims which were the

3    subject matter of these monies.  We said, "We are afraid they

4    are going to continue to litigate with us in Texas, Judge.

5    There is no jurisdiction."

6          He enjoined them from proceeding from any manner

7    whatsoever against the Podhurst firm.

8          THE COURT:  Right.

9          MR. MARKS:  They continued to do so, to the point

10   where we had to file a motion objecting to personal

11   jurisdiction.

12         They fought that.  We had to have discovery.  They

13   sought a rehearing.  There was additional discovery, and

14   ultimately we won.

15         And not only did we win, it was taken up on appeal in

16   the 5th Circuit, and they withdrew their appeal.  So there is a

17   binding order that we were not parties to Texas.

18         We never have been parties to Texas.  We were not

19   transferred to Texas, and we never voluntarily appeared in the

20   Texas removed action or in the transferred case.

21         So in order for the --

22         THE COURT:  I thought that you litigated a personal

23   jurisdiction motion out there?

24         MR. MARKS:  We did; that we were not entitled to

25   personal jurisdiction.  We did not litigate any merits where we

1   were seeking recoveries.

2           THE COURT:  Right.

3           MR. MARKS:  So it would be completely inconsistent for

4   us to affirmatively seek relief in a jurisdiction in a case

5   where we have now been dismissed, where the judge recognized

6   that we were going to object to personal jurisdiction in Texas,

7   which meant we would never go to Texas to seek our fees.

8           So implicit in his ruling was that if we want to seek

9   fees, "Come back before me," which we did.

10          We notified him and said, "look, Judge, we don't

11  intend to seek fees at this early stage.  If they behave, they

12  follow your order and leave us alone, we are done."

13          Unfortunately, that did not occur.  So how could it be

14  that we would have to go to Texas, where we are not a party, to

15  ask a Texas judge, which has now found we are not subject to

16  jurisdiction in that court, to seek the relief which this judge

17  said we could later seek?

18          So a fair reading of everything that transpired, I

19  think necessarily requires, we believe, shows that this is the

20  court that we would go to to seek that relief, not a Texas

21  court, otherwise we would never be able to seek the relief

22  because we are not going to voluntarily appear.

23          THE COURT:  I hear you, but basically, Mr. Marks, what

24  you are saying is I think you are conceding is that neither of

25  Judge Gold's orders specifically say, "I am reserving

1    jurisdiction to entertain this order."

2              I was just waiting for your co-counsel to finish.

3              MR. MARKS:  No.  I heard you.  I heard what you were

4    saying, and I don't believe there is anything specific in the

5    record which says, "I personally am reserving jurisdiction for

6    this purpose."

7              THE COURT:  Right.  So he just basically reserved

8    jurisdiction, or he basically gave you the right to bring the

9    issue up again.  He didn't specify where you would bring that

10   issue up; is that right?

11             MR. MARKS:  Yes, that's true.  I don't think it is

12   explicit in these documents, but I can't imagine it meaning

13   anything else since we were dismissed from the transferred

14   case.

15             We were not being transferred to Texas.  Where else

16   could we go, other than before him, since we are not a party to

17   the Texas federal case?  And the other Texas case was a removed

18   case where we were contesting jurisdiction.

19             So I don't think he was expecting, I guess.  I mean,

20   only he could tell us for sure what he was doing, but I don't

21   think he was expecting us to go to Texas to seek our fees.

22             THE COURT:  All right.  So let's assume for the sake

23   of discussion that you are correct; that these two orders from

24   Judge Gold should be interpreted to mean, even though they

25   don't expressly say so, but they should be interpreted to mean

1    that this order is without prejudice to Podhurst's right to

2    later move in front of me in the Southern District of Florida

3    for an award of attorneys' fees and costs incurred with the

4    first phase of this interpleader action.

5           Let's assume that that additional language is in

6    there.

7           MR. MARKS:  But if you read that in connection with

8    the notice that we filed, which says, "Plaintiffs requests that

9    the court do same here, retain jurisdiction to adjudicate any

10   claim to attorneys' fees, and that plaintiff may, from the

11   first interpleader phase until the current, until the court in

12   Texas adjudicates the rights of the various claimants to the

13   deposited funds.

14          Plaintiff has no objection to transferring the action

15   and administratively closing the case.  It simply requests that

16   the court retain jurisdiction to hear any fees, claim for fees

17   and costs that the plaintiffs may file at a later date."

18          This was the notice to the court in response to his

19   first order saying, "Okay.  Transfer it, but you keep it."

20   Then that subsequent order came.

21           "All right.  Podhurst, we are reserving the right."

22   So if you read this in conjunction, the notice we filed in

23   conjunction with his order that immediately followed, I think

24   it is certainly clear, at least to us, that he was intending to

25   keep the jurisdiction as we had asked.

1          THE COURT:  Right.  I actually had not gotten to my

2   question yet.

3          MR. MARKS:  Oh, okay.  I am sorry.  I apologize.

4          THE COURT:  No.  That's okay.

5          MR. JOSEFSBERG:  Part of your question is answered in

6   the court's March 22nd, 2010 order, the order and the

7   injunction.

8          "The court found that Podhurst was a disinterested

9   stakeholder as relates to the interpleaded funds and entered an

10  injunction pursuant to 25 U.S.C. 2361 to protect "Podhurst as a

11  disinterested stakeholder from vexatious and multiple

12  litigation."

13         Now, that was part of the injunctive order.  You have

14  jurisdiction to enforce that.  That is part or that is one of

15  the other problems of your jurisdiction, because it wasn't just

16  transferring it, and it wasn't just saying, "I reserve

17  jurisdiction for attorneys' fees."

18         It was saying that it is being done to protect us as a

19  disinterested stakeholder from vexatious and multiple

20  litigation.

21         They have breached that.  We are here with you having

22  jurisdiction to enforce Judge Gold's order of March 22, 2010 in

23  the injunctive order.

24         THE COURT:  So my question was going to be in the

25  second page here, where the judge said, "After you gave the

1  judge notice that you were not going to be seeking attorneys'

2  fees at the time," because basically from my reading of the

3  transcript what happened was the judge says, "Look, I am going

4  to transfer the case.  I am going to give you all the right to

5  come in now for attorneys' fees.

6      I will rule on the attorneys' fees.  Then I will send

7  the case to Texas," but instead of coming in at that time with

8  a specific application for a particular amount of fees, you

9  said, "It is premature.  We are not going to raise the fees

10  issues at the time."  Am I correct so far?

11      MR. JOSEFSBERG:  Yes.

12      THE COURT:  All right.  And then the judge entered

13  this order, docket entry 119 transferring the case, closing the

14  case and then saying in numbered Paragraph 4, what we just read

15  before, "The order is without prejudice to Podhurst's right to

16  later move for an award of attorneys' fees and costs incurred

17  with the first phase of this interpleader action."

18      So here is my question:  Assume you are correct, that

19  that this language actually means that the court is reserving

20  jurisdiction for itself for Podhurst to raise that issue here

21  in this district, it is, as Mr. Marks said, implicit.  You have

22  to read it in, but let's read it in.

23      It only reserves jurisdiction for fees and costs with

24  the first phase of the interpleader.  It wouldn't reserve

25  jurisdiction for your current motion, would it?

1          I mean, right now you are seeking a show cause order

2     for civil contempt.  That was not reserved in Paragraph 4, was

3     it?

4          MR. JOSEFSBERG:  You are correct, Your Honor.

5          THE COURT:  Okay.  So where does the jurisdiction for

6     that come?

7          MR. JOSEFSBERG:  You inherit jurisdiction to enforce

8     the orders of this court.  In the order of the March 22nd order

9     holding that Podhurst is a disinterested stakeholder and is

10    protected from vexatious and multiple litigation.

11         That part has been breached, and the court has

12    inherent right to enforce its orders, and that order has been

13    broken.

14         The 28 U.S.C. 2361, Section 2361, "Holds in any civil

15    action or interpleader, the nature and interpleader under

16    Section 1335, a District Court may issue its process for all

17    claimants and enter its order restraining them from instituting

18    or prosecuting any proceeding in any state or U.S. court

19    affecting the property."

20         They have breached that.

21         "Such district shall herein determine the case and may

22    discharge the plaintiff from further liability and make the

23    injunction permanent and make all appropriate orders to enforce

24    its judgment."

25         What we are asking for is an appropriate order to

1   enforce its judgment that we should be protected from vexatious

2   and multiple litigation which they were prohibited from doing

3   backed by the court's order.

4           THE COURT:  Right.  But once the case gets

5   transferred, can a court, can a transferor court sort of cherry

6   pick particular issues and say, in effect, "I am transferring

7   the entire case.  I am sending the entire case to some other

8   district.

9           However, I am going to keep issue number 1.  I am

10  going to keep issue number 5, and I am going to keep issue

11  number 12 because I think I have jurisdiction to enforce a

12  prior order."

13          Can you do that, or is it just transferred?

14          MR. JOSEFSBERG:  No, Your Honor.  You cannot do that.

15          THE COURT:  Okay.

16          MR. JOSEFSBERG:  And we are not asking you to cherry

17  pick.  Firstly, we were not transferred.  Podhurst Orseck was

18  never transferred.  It was specifically excluded from the

19  transfer to Texas, and we were still here.

20          THE COURT:  Right.  You were dismissed.

21          MR. JOSEFSBERG:  Correct.

22          THE COURT:  Right.

23          MR. JOSEFSBERG:  And one of the things, one of the

24  important considerations that was present at that hearing

25  before Judge Gold and in his order was our attitude was very

1    simply, and it is appropriate for this community, our attitude

2    was "no mas."  No mas.  Leave us alone.  We will even put in

3    more money.  Let them fight between people funding lawsuits,

4    divorces, taxes, et cetera.  Let them fight about that in

5    Texas.  We just want to be left alone."

6          And the court ruled that, as a disinterested

7    stakeholder, we were to be left out of any vexatious or

8    harassing litigation.  That is why we wanted this, agreed to

9    this and advocated for it.

10         THE COURT:  All right.

11         MR. JOSEFSBERG:  So what we are asking you is to

12   enforce that.

13         THE COURT:  All right.  But let's assume the case gets

14   transferred, and similar to the general rule of transfers, once

15   the case is transferred, it is transferred, and the original

16   court loses jurisdiction.  Let's just go with that basic rule.

17         MR. JOSEFSBERG:  Yes.

18         THE COURT:  Once the case was transferred, if you all

19   felt that you were being harassed, and if you felt that the

20   judge's order was being violated, I take it your position is,

21   "Well, normally we could raise that issue in the transferee

22   court, but we really, as a practical matter, cannot do it here

23   because we don't want to subject ourselves to the in personam

24   jurisdiction of the Texas court.  And, therefore, if we cannot

25   raise that issue here, we are without a remedy."

1        Is that basically your view?

2        MR. JOSEFSBERG:  Yes.  Very much so, Your Honor, and I

3   do not want to go into details or attempt to make a record on

4   it.

5        When we said, "no mas," we meant we do not want to be

6   in Hidalgo County Texas.  We don't want to be there.  We don't

7   want to be harassed there.  We don't want vexatious litigation.

8   We just want to stay here in bright, sunny dry South Florida.

9        THE COURT:  With Roberto Duran.

10        MR. JOSEFSBERG:  Right.

11        THE COURT:  Got it.

12        MR. JOSEFSBERG:  And just leave us alone.  That's all

13   we ask for.  Leave us alone.

14        THE COURT:  Okay.

15        MR. JOSEFSBERG:  Now, if the order had said, for

16   instance, if the transfer order had said, "And no one, because

17   of religious purposes, is to have any depositions on Fridays,"

18   if the order had said that, and they were setting depositions

19   for Friday, I believe we could come back here and say, "Enforce

20   your order.  That is what you said," and we are caught in this

21   Catch-22 because we cannot go there to enforce it, and we don't

22   want to be there, and on those very facts, our firm had the

23   foresight to say, "We want to be here."  That's why we filed

24   the lawsuit here.

25        THE COURT:  Right.

1        MR. JOSEFSBERG:  That is what we advocated.  Just let

2   us, on a level playing field, be out of this.  We want things

3   resolved here to the extent that we are not playing on their

4   field in Texas.

5        THE COURT:  Let me ask you this question because I

6   have heard you say and Mr. Marks say a few times, "There is no

7   jurisdiction over us in Texas, and we won that argument," but

8   I think there was a motion for reconsideration filed in Texas,

9   and I read some of those papers, and I read some of the

10  affidavits, and I read some of the arguments about specific

11  jurisdiction, about general jurisdiction, about how many cases

12  your firm has handled in Texas and about how many cases you

13  have referral arrangements with law firms in Texas, how many

14  checks your firm sent out to Texas, et cetera.

15       So I have to tell you when I read all of those

16  materials, I said to myself, "Well, is it, in fact, correct

17  that the Podhurst firm would not be subject to in personam

18  jurisdiction in Texas, given all of these activities?  Is that

19  still a viable issue out there?

20       MR. MARKS:  Let me address that problem.

21       MR. JOSEFSBERG:  They attempt to make it viable.

22       MR. MARKS:  No.  No.

23       MR. JOSEFSBERG:  The court has ruled and asked for a

24  hearing.

25       MR. MARKS:  No.

1          THE COURT:  Wait.  Only one lawyer at a time.  I am

2     sort of violating my own rule of one lawyer per side, but I

3     can't have both of you talk at once.

4          If you want to defer to Mr. Marks, because he may have

5     more factual familiarity, that's fine.  If you want to answer,

6     that's fine, too, but really one or the other.

7          MR. JOSEFSBERG:  Would you prefer me to answer not

8     knowing the facts, or Mr. Marks to give you an intelligent

9     factual response, Your Honor?

10         THE COURT:  My heart would soar like a hawk to hear

11    you speak, not knowing what you are saying, but in the

12    interests of actually getting a correct answer, let's hear from

13    Mr. Marks.

14         MR. MARKS:  The issue is no longer before the Texas

15    court.  The judge had issued a stay after that discovery and

16    the subsequent filings and was waiting for the Parks law firm,

17    which also had a motion to dismiss.  Parks was also sued in

18    Texas.  That case Judge Crane decided first.  They took an

19    appeal of that decision.

20         THE COURT:  Who is "they?"

21         MR. MARKS:  The Law Funder.  The receivers.

22         THE COURT:  All right.

23         MR. MARKS:  All of those folks in Texas.

24         THE COURT:  Right.  Right.

25         MR. MARKS:  So both the Parks firm and the Podhurst

1    firm were objecting.

2           Ours was stayed after he ruled that we were not the

3    subject.  The reconsideration was never ruled upon, but

4    subsequently, because they want to get back into state court,

5    they withdrew the motions both before Judge Crane and in the

6    5th Circuit so that the law of the case is that we are not

7    subject to jurisdiction, nor is Bob Parks' firm subject to

8    jurisdiction.

9           There has been no order vacating or reconsidering the

10   receivers, and the people that were trying to hold us, they

11   withdrew us from the case.

12          THE COURT:  And can that issue later be raised in some

13   other form or some other motion or some other later aspect of

14   the case?

15          MR. MARKS:  I don't believe so, but I would love to

16   hear receivers' counsel say that they are going to honor that

17   decision and not try and submit us to jurisdiction in the Texas

18   court because that would go a long way to try and resolve this

19   matter.

20          THE COURT:  All right.  Yes.

21          MS. VELA:  Your Honor, just for clarification

22   purposes, Mr. Marks had mentioned earlier that this issue had

23   been appealed.

24          The only appeal that was ever taken of the motions to

25   dismiss was with regard to the Haggard law firm.

1      The motion to dismiss that was decided by Judge Crane

2  in Texas in the sister case, the removed divorce proceeding,

3  there was a motion to reconsider filed by the receivers because

4  of an agreement that we had with Texas counsel that Mr. Marks

5  could be deposed on the issues pending prior to the court

6  determining those issues in their motion to dismiss.

7      THE COURT:  Right.

8      MS. VELA:  Which the court allowed us to do.

9      We have subsequently agreed to withdraw that motion to

10 reconsider, and the court has granted that withdrawal and the

11 motion has been withdrawn, and at this point that is where it

12 stands.

13     THE COURT:  All right.  So the current procedural

14 posture is the Podhurst Orseck motion to dismiss for lack of in

15 personam jurisdiction has been granted, and the motion for

16 reconsideration has been withdrawn?

17     MS. VELA:  That is correct.

18     THE COURT:  All right.  So they are not in that case.

19 They have been dismissed from that case?

20     MS. VELA:  That is correct.

21     THE COURT:  All right.  All right.  So if that is the

22 situation, and if the Podhurst Orseck firm takes the view that

23 there is no jurisdiction over them in Texas, and their common

24 sense argument is, "Look, Judge Gold's order has to be read to

25 allow us to come back to this court to, A, seek fees for phase

1    1, and 2, to seek some kind of relief of the injunction were to

2    be violated, what is your response to that?

3                MR. PHELAN:  I will have to address that one, Your

4    Honor.

5                THE COURT:  All right.

6                MR. PHELAN:  The response is multiple, and I would

7    like to, before I get directly to your point, if I may, I would

8    like to address a number of things counsel from Podhurst just

9    raised.

10               It is important for this court to recognize that at

11   the time the interpleader action was filed here, there was

12   already a court case pending in Texas.

13               THE COURT:  The divorce proceeding?

14               MR. PHELAN:  There was already a case that had been

15   removed to federal court.

16               THE COURT:  All right.  Go on.

17               MR. PHELAN:  That's point 1.  The second item is at

18   the original hearing on this matter, we pointed out, on behalf

19   of receivers, that there are some serious jurisdictional

20   issues, and that in order to be here properly, the interpleader

21   action had to have at least one claimant here.  This is

22   mandatory under the Venue Statute.

23               THE COURT:  Right.

24               MR. PHELAN:  It is not permissive.  And if you are not

25   here properly under the Federal Interpleader Statute, you

1    cannot turn around and say, "I am going to rely on the federal

2    statute providing us in personam jurisdiction."  That was also

3    addressed.

4             THE COURT:  Right.

5             MR. PHELAN:  I would also like to address this

6    specific issue, which is what was in Judge Gold's order?  What

7    was he considering at that hearing?  And I think it is relevant

8    to go to look at the transcript.

9             THE COURT:  I have it.

10            MR. PHELAN:  There is actual provisions where he

11   speaks directly to the fact that if the injunction, if anybody

12   complains that the jurisdiction is violated, you bring it up to

13   the Texas court.

14            THE COURT:  Show me what page.

15            MR. PHELAN:  Page 16.

16            THE COURT:  Bare with me just a minute.

17            MR. PHELAN:  16 and 17.  Excuse me.  It kind of runs

18   starting at line 12 and on line 10, page 17

19            THE COURT:  Right.  So basically what Judge Gold is

20   saying, "Look, if I transfer the case to Texas, what do you

21   care?"

22            This is a comment addressed to the Podhurst firm.

23   "What do you care and how are you hurt if you are not in the

24   case anymore?  Why do I need to take on all of these issues?"

25            I think at the time counsel for Podhurst,

38

1   Mr. Martinez-Cid says, "We would not oppose it at that point if

2   we are not being sent to Texas where there is no jurisdiction,"

3   and you do exactly what you just said, then that seems to make

4   a lot of sense, with one exception.  Is that what you are

5   talking about?

6            MR. PHELAN:  You can continue on down to line 10.

7            THE COURT:  Right.

8            MR. PHELAN:  Where it says specifically, "So if you

9   are out, you are not in Texas with everybody else, and there is

10  that injunction issue which that District Judge over there may

11  look at and make determinations about."

12           THE COURT:  Right.

13           MR. PHELAN:  And that's one of the references as far

14  as trying to get a better understanding of what the judge was

15  talking about and interpreting his order.

16           Counsel has suggested that implicit in his order was

17  somehow a retaining of jurisdiction on this one point of the

18  injunction.

19           We have provided case law.  We believe that the case

20  law indicates, as Your Honor said originally, that upon

21  transferring, exempt for items that have been specifically

22  severed from the case, the case is transferred for all

23  purposes, and the final determinations, including

24  determinations of any order previously entered becomes the law

25  of the case, and the transferor, transferee court now has

39

1    exclusive jurisdiction to make all final determinations on that

2    in the case.

3           THE COURT:  Right.  Go ahead.

4           MR. PHELAN:  Let me address the other item because it

5    is also important for the jurisdictional issues that I think

6    are still relevant to this court.

7           We pointed out to the court that under the Venue

8    statute, 28 U.S.C. 1397, that it is improper.  You have to have

9    a claimant here.

10          There is no doubt Judge Gold's order said, "There is

11   no claimant.  We are going to transfer it."

12          He did carve out an exception to the attorneys' fees

13   to the extent that language provided such.

14          THE COURT:  Well, let's talk about that for just a

15   moment.  I am sorry for interrupting you, but that carve-out, I

16   am using the term that you just used, the carve-out, that's

17   basically Paragraph 4 of the order denying the pending motions,

18   right?

19          MR. PHELAN:  I believe so.

20          THE COURT:  Okay.  Why don't you turn to it.  Take

21   your time.  Docket entry 119.  It is a two page order entitled

22   "Order denying pending motions as moot."  Are you there?

23          MR. PHELAN:  Yes, sir.  That's fine.

24          THE COURT:  Okay.  So you turn to page 2.

25          MR. PHELAN:  Yes, Your Honor.

1          THE COURT:  "This order is without prejudice to

2     Podhurst's right to later move for an award of attorneys' fees

3     and costs incurred with the first phase of the this

4     interpleader action."

5          Is that what you are referring to when you say, "The

6     carve-out provision?"

7          MR. PHELAN:  Yes, I.  Was trying to clarify.  You were

8     talking earlier today about a vanilla order that just said,

9     "Transfer the case," and I am trying to be as candid with the

10     court.  I am aware of the language that the judge said that

11     they would reserve on the issue of attorneys' fees and costs.

12          THE COURT:  Right.  Okay.  But when you just a minute

13     ago used the term "carve-out," is the paragraph that you were

14     referring to?

15          MR. PHELAN:  Yes, I am.  That is the sole paragraph I

16     am referring to.

17          THE COURT:  All right.  So the carve-out paragraph, is

18     it your view that Judge Gold carved that out, meaning that the

19     Podhurst firm could raise the issue of fees and costs in Texas

20     where the case has been transferred, or is it your view that

21     this carve-out was intended to mean, under an implicit reading

22     of this paragraph, that the Podhurst firm could raise the issue

23     of fees and costs right here in the Southern District in front

24     of Judge Gold?

25          MR. PHELAN:  I am not sure what the judge intended.

1    My understanding of that was that, in fact, the question of

2    attorneys' fees would have to be raised in the jurisdiction in

3    which the case was transferred to.

4            I can understand the argument being posed by the

5    Podhurst firm that this is, as I just referred to it as a

6    carve-out for the attorneys' fees and costs.

7            THE COURT:  All right.  Yes, ma'am.

8            MS. VELA:  Your Honor, may I add one thing to that?

9    The award of attorneys' fees and costs to the Podhurst firm was

10   at one point raised in front of Judge Crane, mentioned in front

11   of Judge Crane during one of our proceedings, and Judge Crane,

12   counsel can chime in if they have the same recollection, but

13   Judge Crane indicated that he could make that determination as

14   to any award of attorneys' fees for the Podhurst firm.

15           The basis for that is because any award of attorneys'

16   fees and costs would affect the final distribution of the funds

17   that were transferred or to be transferred in this case, and it

18   would affect the outcome for those parties that were making

19   claims to those funds.

20           THE COURT:  And this would be fees and costs in

21   connection with what Judge Gold called the first phase of the

22   interpleader action?

23           MS. VELA:  That's correct.

24           THE COURT:  All right.

25           MR. FEAMAN:  Your Honor?

1          THE COURT:  Yes.

2          MR. FEAMAN:  On behalf of Law Funders, Peter Feaman.

3          If I may just briefly speak to the issue you raised

4    concerning that the plaintiff would be out without a remedy if

5    he somehow could not come back here, I know of no law which

6    would say that they would subject themselves to the

7    jurisdiction of the Texas court by seeking sanctions, for

8    example, under Rule 11 for, in what their view might by a

9    frivolous complaint against them because it violates Judge

10   Podhurst's order.

11         They are certainly free to have done that in Texas

12   without subjecting themselves to the jurisdiction of that

13   court.

14         THE COURT:  Well, that was a point that I was going to

15   ask both sides about because, candidly, Mr. Marks, I noticed in

16   your memorandum, and I don't know whether you drafted it, or

17   your partner or some associate or somebody from the firm, but

18   you did make the argument in your memo that if you were to go

19   back to Texas on these issues that you would be basically

20   waiving your in personam jurisdiction argument, and you would

21   be subjecting yourself to the jurisdiction of the court, but

22   when you made that comment or made that argument, there was no

23   citation of authority.  It was just rhetoric.

24         Do you have any case law, statute, cases otherwise

25   that would support that view?

1          MR. MARKS:  I certainly don't have them in my pocket

2     right now where I can refer you to a specific case.

3          I think it is pretty clear in general, I thought it

4     was a pretty-well established principle if somebody voluntarily

5     submits to a jurisdiction that they become subject to suit

6     there.

7          The fact that you prevailed on a, it is not even worth

8     a chance because what has happened in Texas, and I don't want

9     to get too far astray from the issues here, has been nothing

10    less than appalling.

11         The conflicts of interest, the fact that these

12    attorneys and these receivers have gotten this far without

13    anyone doing something about it speaks volumes of the risk

14    anyone would take by jumping into a Texas court.

15         At the last hearing Judge Crane seemed to start to

16    realize, "Whoa, there is a lot of things here, a lot of

17    questions that need to be answered."

18         You have receivers who are claimants who are from

19    different states who have conflicts, on and on and on, and they

20    have been able to go for two years or more getting original

21    orders from a Texas Hildalgo County judge that no court I think

22    or anyone where else in the United States would ever enter.

23         I won't get into the history of that courthouse.  You

24    can read about it, and the prior judge and the judges that sit

25    in that courthouse in Hidalgo County, but we couldn't even find

1    lawyers that are reputable that were willing to go down to

2    Hidalgo County because of the reputation of that courthouse.

3          So would we, as a practical matter, ever submit

4    ourselves to a court that might get remanded, God forbid, and

5    some judge say, "By voluntarily seeking affirmative relief on a

6    case that you have been dismissed," because now we have to

7    appear.  We are out.  We have never been a party to that case.

8          THE COURT:  Right.

9          MR. MARKS:  And we have to appear in a federal action

10   because we are dismissed from the federal action, we were a

11   party to a state Hidalgo County removed action.

12         So where are we going to seek?  We would have to

13   voluntarily appear in a case that we have never been a party to

14   outside of Florida, and Judge Crane, thank God, took control of

15   it and got us out of the state court case.

16         As a practical matter, there is no amount of money

17   that is going to voluntarily subject our firm to even the risk

18   of jurisdiction.

19         THE COURT:  All right.  Let me make sure, Mr. Marks,

20   procedurally I am clear on what is happening in Texas.

21         The order that granted your motion to dismiss on

22   grounds of a lack of personal jurisdiction, that was in the

23   state court lawsuit that was removed to federal court?

24         MR. MARKS:  Correct.

25         THE COURT:  Okay.  Bear with me just a minute.  And

1    that was the divorce related action?

2             MR. MARKS:  Correct.

3             THE COURT:  Okay.  And the case that was here in front

4    of Judge Gold and that had been transferred to federal court in

5    Texas, that's a different lawsuit?

6             MR. MARKS:  That is correct.

7             THE COURT:  A different lawsuit.

8             MR. MARKS:  That was an original jurisdiction federal

9    interpleader action we filed, and I believe procedurally we

10   filed before the removal of the state court action.

11            I think the timing was, and I see nods of heads

12   saying, "yes," I think my recollection was correct, that, in

13   fact, it was subsequent that the U.S. Government was joined by

14   Mr. Swartz which created the federal jurisdiction.

15            They sued the IRS, and then that state court action

16   which we were terrified of because of the history of that court

17   was removed, and then our case was transferred without us.

18            THE COURT:  What city is Hidalgo County in, basically?

19   What is the main city there?

20            MR. SWARTZ:  Your Honor, Edinburg, Texas.

21            THE COURT:  Edinburg?

22            MR. SWARTZ:  They can speak to it, also.  There are

23   two kinds of courthouses.

24            THE COURT:  Just lower the microphone, sir.

25            MR. SWARTZ:  The county seat is in Edinburg,

1    E-d-i-n-b-e-r-g like Scotland.

2         The federal courthouse is for the whole division,

3    which is 5 or 6 counties, including Hidalgo County is before

4    Judge Crane, and Mr. Marks is correct.

5         I removed the case.  I filed, joined the IRS on

6    December 14th.  I joined the United States on December 14,

7    2009.

8         On January 26th, approximately, Mr. Linder removed it

9    because of the federal question.  That's the sequence.  That's

10   two months after the October filing in this court in 2009 of

11   the interpleaders.

12         THE COURT:  So we have two federal cases in Texas.

13   One is the one removed from state court and one is the one

14   transferred from this district.

15         Is it the same Federal District Court Judge who is

16   presiding over both cases?

17         MR. SWARTZ:  Yes.

18         THE COURT:  Okay.

19         MR. SWARTZ:  And one other matter, Your Honor.

20   Technically, the case here was transferred to Houston.

21         We filed a 1404 and a 1406(a) motion.  It was not

22   granted immediately.  It wasn't opposed, and then months later

23   the funds, we thought the funds were moved from Florida to

24   Houston to McAllen, and the funds are still here.

25         And after all things are said, I would like to be

1  heard on the final judgments I have to all of those funds by

2  Judge Crane.

3           THE COURT:  Listen, we have all afternoon.  I haven't

4  scheduled everything else.  Everybody is going to get a chance

5  to say anything that they want to, assuming it is relevant.

6  Yes, sir.

7           MR. LINDER:  Your Honor, I just want to provide maybe

8  the court the case numbers because it does get confusing.

9           The interpleader case that we are here on today, the

10  ultimate case number for that in the Southern District of Texas

11  is case number 10-CV-479.

12           THE COURT:  All right.  And that's also fortuitously

13  in Hidalgo County?

14           MR. LINDER:  That's in the McAllen Division of the

15  Southern District of Texas where the court is located.  The

16  McAllen Division encompasses Hidalgo County and a couple of

17  other counties.

18           THE COURT:  All right.  The removed case.

19           MR. LINDER:  The removed case, the divorce action that

20  was removed was case number 10-CV-12.  That also is pending in

21  the Southern District of Texas, the McAllen Division.

22           THE COURT:  Okay.

23           MR. LINDER:  And the judge presiding over both of

24  those cases is Judge Crane.

25           THE COURT:  Right.  Right.

 1         MR. LINDER:  And I am the one that removed it.  He is

 2    not happy.

 3         THE COURT:  Yes.

 4         MS. VELA:  Your Honor, and just for I guess

 5    clarification purposes, so the Court understands, well, aside

 6    from the fact that I do take issue with Mr. Marks' statements

 7    regarding the legal system in Texas, the fact that he cannot

 8    apparently find reputable counsel, which I disagree with his

 9    counsel that he had in Texas who is quite reputable, and our

10    judicial system down there, I do take issue with that, but for

11    the purposes of understanding, once the case was transferred

12    from Florida, it ended up in Houston because that is the

13    main --

14         THE COURT:  Hub.

15         MS. VELA:  -- yes, for the Southern District of Texas.

16    It was then subsequently transferred to Judge Crane.

17         We asked that the two cases be consolidated.  Judge

18    Crane decided not to do that because of the fact that this was

19    an interpleader action; a federal interpleader action, and he

20    held jurisdiction within that.

21         The underlining 12 case, which is how we referred to

22    it, the divorce proceeding, Judge Crane acknowledged that that

23    would ultimately be remanded at some point, and should the

24    interpleader action not be determined, he didn't want to have

25    an issue with having to remand the entirety or not being able

1      to remand the divorce proceedings.

2              So they remained separate case numbers, but he ran

3      those two cases concurrently.  We had the same scheduling order

4      in both cases, and we could hold discovery and use discovery in

5      both cases interchangeably and held hearings on both matters

6      simultaneously, and he would advise us if there was an issue

7      that was pending solely within the interpleader action that

8      only those parties that were in the interpleader action had to

9      attend versus those in the divorce proceeding.

10             THE COURT:  All right.

11             MR. SWARTZ:  Your Honor, there is one other matter

12     that will take us --

13             THE COURT:  Sir, just take your seat.  I am going to

14     give you an opportunity.

15             MR. SWARTZ:  This is about Mr. Marks' remarks about

16     the ethics.

17             Judge Crane, in half of two proceedings, Your Honor,

18     has outlined in great detail, in colloquy with counsel,

19     including Ms. Vela, the conflicts, and worse, he has not swept

20     it under the rug, or anything.

21             It is all there.  If you would read the August 12,

22     2011 hearing, or the September 6th hearing, half of those

23     proceedings are outlining to counsel why they are in conflict,

24     starting with Mr. Callagy who is one of his two counsel is here

25     today which has been contested for the whole two years that as

1    a resident other than Texas, he is disqualified from being a

2    receiver, and it gets worse from thereon, but I am not going to

3    go into it all.

4         THE COURT:  Right.  I have only limited issues before

5    me, sir.

6         You don't need a third judge to be presiding over all

7    of the myriad issues that appear to be still pending in those

8    two federal cases, but I wanted to ask you a question, sir,

9    concerning the in personam jurisdiction argument.

10        I heard Mr. Marks say, "Listen, we are very concerned,

11   because if we were to file a motion for fees in the federal

12   case that was transferred from the Southern District of

13   Florida, since we are not in that case, since we were dismissed

14   from the case, we are nervous that we would be subjecting

15   ourselves to the jurisdiction of the court," what authority do

16   you have to suggest to the contrary?

17        I heard you say they could do it.  They could ask for

18   fees in Texas without subjecting themselves to the jurisdiction

19   of the court.

20        What authority do you have to support that view?

21        MR. MARKS:  My suggestion, Your Honor, was in

22   connection with the motion to dismiss that they filed for lack

23   of jurisdiction, and the attempted action to bring them into

24   that action, that is what they are here for today, and they

25   want fees for.

1          They are not here for attorneys' fees with regard to

2     the first phase of the interpleader action.

3          THE COURT:  Yes, they are.  That's part of the relief

4     that they are seeking.

5          MR. MARKS:  Well, that's correct, but it is in

6     connection with a motion for sanctions, if you will, for

7     enforcement of what they consider to be the proscriptions in

8     Judge Gold's order.

9          In connection with the enforcement of that order, in

10    their motion to dismiss, they could have raised Judge Gold's

11    order, moved for sanctions in connection with their motion to

12    dismiss under Rule 11, or any other enforcement provision, and

13    I am not aware of any case law that would then, therefore, say,

14    "You are subject to the jurisdiction of this court."

15         I have represented clients who have been wrongfully

16    served in jurisdiction, and I have moved for sanctions in

17    connection with my contesting jurisdiction without waiving

18    jurisdiction by asking for sanctions because we should not be

19    in that court.

20         So that was the point that I was making, is that you

21    can raise a motion for sanctions in Texas without subjecting

22    yourself to the jurisdiction of that court in a special

23    appearance while you are contesting jurisdiction.

24         THE COURT:  All right.  Well, not to be flip, but to

25    use I guess the same phrase as Mr. Marks, you don't have any

1    authority in your pocket this afternoon on that point.

2          MR. MARKS:  That is correct.

3          THE COURT:  All right.  So we are pocketless today on

4    that point.  Okay.  But to summarize, you believe that the

5    Podhurst firm could file a motion for sanctions in Texas on the

6    contempt show cause theory.

7          And as part of that claim or sanctions motion, they

8    can seek fees for phase 1 of this interpleader action, and the

9    Podhurst firm says, "No, we can't.  That would be too risky,

10   and, in fact, it would be devastating.

11         Basically, those are the two positions, but as

12   important as that issue may be, neither party really has cited

13   any authority, other than a very forcefully stated view that

14   each side is correct.

15         So what I am going to ask you all to do is after this

16   hearing is over, and we are not close to being over yet, but

17   after the hearing is over, I would like each side to submit a

18   memorandum of law on that issue of personal jurisdiction;

19   namely would the Podhurst Orseck firm waive its personal

20   jurisdiction position by filing a motion in the federal

21   transferred action in Texas seeking the relief that they are

22   seeking here now in the show cause order, including fees and

23   costs for phase 1.

24         MR. JOSEFSBERG:  Your Honor, it is slightly different

25   than that, if I can just add one thing.

1          We would respond to that request saying, no, we would

2    not submit ourselves to jurisdiction by filing such a limited

3    appearance.  Our question is might a state court in Hidalgo

4    County rule otherwise.

5          THE COURT:  A state court?

6          MR. JOSEFSBERG:  It may be transferred from there.  It

7    may be in all sorts of different postures because they are

8    moving things back.

9          THE COURT:  Is there anything that is pending in state

10   court now?  I thought they were both in federal court?

11         MR. JOSEFSBERG:  They are in federal court at the

12   moment.  Once the IRS is out, there may not be federal

13   jurisdiction.

14         THE COURT:  All right.  Well, what you can do,

15   Mr. Josefsberg, is in your memorandum you can add an additional

16   nuance and you can address that point of, "We are also

17   concerned about what might happen with a state court judge if

18   somehow some way one of these matters was remanded to state

19   court, or there is a new matter in state court.

20         So you can add that argument, if you would like.

21         MR. JOSEFSBERG:  Thank you.

22         THE COURT:  Okay.  Now how much time do you all think

23   you need to research, organize, draft and submit that

24   memorandum?  It is 2:10 now.  A little joke for the record.

25         MR. LINDER:  Your Honor, if I may?

1          THE COURT:  Yes.

2          MR. LINDER:  Are you requiring the United States to

3    file a brief on that matter?  We really don't have a position

4    on that.

5          THE COURT:  That's fine.  As they say in Texas, I got

6    no dog in that hunt.

7          MR. LINDER:  You all have that one.

8          THE COURT:  Okay.

9          MR. MARKS:  How is Monday?

10          THE COURT:  Listen, take as much time as you need.  I

11    mean, Monday is quick.  If you think you can get it done by

12    Monday, fine.  If you want a few more days, that's fine, too.

13          MR. MARKS:  All right.  Tuesday then.

14          THE COURT:  Okay.

15          MR. MARKS:  Tuesday, the 8th.

16          MR. SWARTZ:  Being a procedural student of Texas law,

17    I am going to answer.  This is germane to your --

18          THE COURT:  Stop.  Stop talking.

19          MR. SWARTZ:  This is on this issue.

20          THE COURT:  Stop talking.  One person at a time.

21    Mr. Marks is in the middle of talking

22          MR. SWARTZ:  I apologize.

23          THE COURT:  You cannot just amble up to the podium,

24    sir, and start pontificating away.  That's just basic common

25    courtesy.  You are being rude.  Don't do that.

1           Yes, sir.

2           MR. MARKS:  Tuesday if Your Honor does not care.  Can

3   I correct my partner and friend, Mr. Josefsberg on one point?

4   I don't want Your Honor to be under a misimpression.

5           Our federal transferred action can never end up in

6   Hildalgo -- I don't believe -- can ever end up in Hildalgo

7   state court because it was never removed.

8           I don't believe a federal judge can transfer a federal

9   case to a state court which was never before a state judge.

10          He can dismiss it in favor of a pending state or he

11  may stay it, or all sorts of things, but I don't think our

12  technical federal action has a different case number as

13  Mr. Linder said, can end up in Hildalgo County.

14          What is likely to occur soon, though, assuming the

15  judge decides to relinquish the divorce proceeding, is he can,

16  once the federal government is out of the divorce case, or the

17  receivers were appointed, he can remand that case because it

18  was removed, but it is unclear when you read those transcripts

19  the judge seems to be intrigued about all of these conflict

20  issues.

21          He seems to want to get to the bottom of it.  So I

22  don't know when that is going to occur.

23          THE COURT:  All right.  And, by the way, on this

24  briefing which will be due next Tuesday, if that deadline works

25  for you all --

1        MR. LOUIS:  Yes, Your Honor.

2        THE COURT:  All right.

3        MR. FEAMAN:  Being solo, Your Honor, my request would

4   be that it be Wednesday.  I am going to be out of town.

5        THE COURT:  Sure.  So what we are going to do is these

6   briefs, which will be due a week from Wednesday, this will be

7   basically simultaneous briefing.

8        By that I mean I am not looking for a memo, a

9   response, a reply.  It is going to be just a one time memo on

10  the personal jurisdiction issues that I have outlined, as

11  amplified by Mr. Josefsberg and Mr. Marks, and I think you all

12  can get it done in 10 pages.

13       Does anybody think they need more than 10 pages?  All

14  right.

15       MR. MARKS:  That is fine, Your Honor.

16       THE COURT:  All right.  10 pages double-spaced will be

17  the maximum on that.

18       All right.  Yes, sir.  You seem very anxious to say

19  something.

20       MR. SWARTZ:  Oh, no.  I apologize.  I thought

21  Mr. Marks was through, Your Honor.  A brief 10 second history

22  of Texas procedure.

23       In Texas state courts, until 1976 the rule of Yark

24  versus Texas by the U.S. Supreme Court held that Texas law says

25  if you come into any state court in Texas, you have appeared

1    generally, period.

2          In 1976, we passed or the Supreme Court, the Texas

3    State Supreme Court enacted Rule 120(a)of the Texas Rules of

4    Civil Procedure that gives you a limited special appearance,

5    but it permits discovery on unrelated matters.

6          So even filing that special appearance, foreign

7    corporations, international corporations subjected themselves

8    to financial, tax everything else.  So the door is opened.

9          I just thought that would assist them in knowing the

10   history of appearing in the state courts, and Judge Crane in

11   the last two weeks has held hearings.

12          I have the October 7th proceedings.  I didn't buy the

13   October 14th.  He is very close to remanding this case.

14          He was holding it up because of a pending related case

15   in the 5th Circuit that has now been decided.  So to supplement

16   Mr. Marks' remarks, and Mr. Marks and I are largely on the same

17   side here, if I were him, I wouldn't appear in Hildalgo County,

18   either, and I have been practicing 57 years in Texas.

19          I have cases there.  I have a branch office with

20   another lawyer in Hildalgo County.  So I am speaking of myself.

21   I am part of the system.

22          THE COURT:  All right.  Well, listen, I am not

23   requiring you to submit a memorandum of law on this issue, but

24   if you would like to, you may certainly do so as a friend of

25   the court and a friend of the parties.  Yes.

1              MS. VELA:  Your Honor, if I may, while I may not agree

2       with everything that Mr. Marks said, what he did say was

3       correct, that the action, the interpleader action cannot be

4       remanded to the state court.

5              THE COURT:  Right.  Right.

6              MR. PHELAN:  And what Mr. Swartz just mentioned about

7       the other action is the divorce proceeding, it is completely

8       separate from the interpleader action.

9              THE COURT:  I understand.  All right.  So let me ask

10      this question:

11             How is it that the funds are still here in this

12      court's registry?  Does anybody know an answer to that?

13             MR. LINDER:  I do, Your Honor.

14             THE COURT:  Yes.

15             MR. LINDER:  When the U.S. filed its motion to

16      dismiss, we submitted an order, and included in that order was

17      the portion regarding the transfer of the funds.

18             THE COURT:  Right.

19             MR. LINDER:  When Judge Gold held his hearing, and

20      initially I think you can go back to the October, the docket

21      110 about the order issuing the injunction, agreeing to

22      transfer the case, he reserved until I believe it was March 26,

23      2010 to allow Podhurst & Orseck to file motions for attorneys'

24      fees regarding the first interpleader action.

25             So he didn't issue an order transferring the funds.  I

59

1    think he was -- well, I don't want to say implicit.  We have

2    been arguing all day, but it looks like he was withholding the

3    funds here prior to transferring the case to see ultimately

4    what would be transferred would be less than the 800,000 to

5    take the fees out.

6              THE COURT:  Right.  Right.

7              MR. LINDER:  The next order that was issued

8    transferring the case was an order that was not submitted by

9    the parties.

10             It was an order issued by the court itself, and it did

11   not include that.  There is no requirement in a 1404 order that

12   says you have to have a special line entry to transfer the

13   fees.

14             The Clerk's Office likes that.  I have seen it both

15   ways.  I have seen where it has not done it and the parties had

16   to go back in, but I believe procedurally the court issued its

17   order.

18             There was not a specific line entry there for the

19   clerk saying, "Disburse the funds or transfer the funds."

20             The Clerk of Court here feels, and many do, that

21   under, I think it is 28 U.S.C. 2042 regarding disbursement of

22   monies from the clerk, it has to be specifically by court

23   order.

24             THE COURT:  Right.

25             MR. LINDER:  They felt that that wasn't in the order.

60

1   They didn't transfer the funds, and maybe Judge Gold was under

2   the impression that all of the courts are on the same registry.

3         I know the Texas courts feel that way, and that is

4   what happened.  We believe it a ministerial act, and we

5   probably started the ball of wax in this case, by the ball

6   rolling by filing a motion to distribute what we were just

7   hesitant.

8         We didn't want to sue the clerk.  I mean, when you sue

9   the clerk, it is like us suing ourselves, and it is hard for

10  the clerks because they have to go get private counsel because

11  they cannot get anybody to represent them, and I can tell you

12  we operate in Texas and we have discussed it with the U.S.

13  Attorney's Office here.

14        It was not pleasant that we wanted to do that, but I

15  believe that is what happened on the transfer.  I believe it

16  was just an act overlooked, and had I had the case then, I

17  probably would have come in and said, "No, let's get a separate

18  order for the transfer funds" because it wasn't in the court's

19  order, and that would have resolved these issues.

20        THE COURT:  So basically you are saying there was an

21  administrative snafu and the money should have been

22  transferred, and under one interpretation it could have been

23  transferred, but because of the reasons you just outlined,

24  logistically it has not happened yet, but it should have?

25        MR. LINDER:  That's my belief, Your Honor.

1        THE COURT:  And does the Podhurst firm agree with that

2   assessment?

3        MR. MARKS:  I have no knowledge.  I have no reason to

4   doubt what he is saying.  I am sure that's true.

5        THE COURT:  All right.

6        MR. MARKS:  I am sure Mr. Linder is telling you

7   accurately.

8        THE COURT:  Okay.  Here is what I did to prepare for

9   the hearing, which is I went back and pulled the transcript

10  from the March 17th hearing, and you can find out some

11  interesting things in a transcript, and in particular I am

12  talking about page 30 of the transcript.

13       I don't know if you all have that handy, but if you

14  don't, I will just read for you Judge Gold's comments.

15       First he says, "I would find that the monies that

16  currently have been filed with me are properly pled and filed

17  with the court, and I accept jurisdiction over them.

18       Now, having said that, it is my intention to also

19  issue an injunction, in a manner consistent with what I have

20  alluded to here, narrowing it from the language that was

21  proposed, but still addressing what I think is a fair

22  interpretation of the statutory authority under Section 2361,

23  and that language which I will mirror as closely as possible.

24       I also will reserve jurisdiction to accept additional

25  interpleader funds under that phase 1 as they may arise," and

1    listen to this -- "and will arrange for the transfer of those

2    funds to the, what is it, the Southern District of Texas

3    McAllen Division."

4         So even Judge Gold, I believe, was under the

5    impression that the funds would be transferred, because if you

6    are transferring the case, it seems somewhat anomalous to not

7    transfer along the money, especially when the action being

8    transferred is an interpleader action which flows from the very

9    money itself.

10        So does anybody have an objection to an order from

11   this court, meaning either myself or Judge Gold, transferring

12   the funds to Texas, which is where the interpleader action has

13   now been transferred?  Does anybody object to that?

14        MR. SWARTZ:  Yes, Your Honor.  I do for the reason

15   that Judge Crane put in his orders documents 181 and 182.  He

16   has ordered those.

17        THE COURT:  Sir, I need you to come up to the

18   microphone, please.

19        MR. SWARTZ:  Oh.  I apologize.  Your Honor, would you

20   like me, may I approach your clerk to give you a copy of those

21   two orders?

22        THE COURT:  Yes.  Do you have copies for other

23   counsel?

24        MR. SWARTZ:  Well, they all have copies, Your Honor.

25   I have got some here.  It starts with the docket entry of

1    September 6th, but these are filed.  They are on Pacer 181 and

2    everybody has been served with them that is here in this

3    courtroom.

4              THE COURT:  All right.

5              MR. SWARTZ:  At least one.

6              THE COURT:  Well, let's start off with docket entry

7    181 in the case of Podhurst Orseck versus Servicios Legales De

8    Mesoamerica S.De R.L. pending in the United States District

9    Court, the Southern District of Texas, McAllen Division, case

10   M-10-479.

11             MR. SWARTZ:  That's one of the two that Mr. Linder

12   distinguished.  This is the interpleader.

13             THE COURT:  Okay.

14             MR. SWARTZ:  Yes.  Both of them.

15             THE COURT:  What about this order would support your

16   objection to having the funds transferred to Texas?

17             MR. SWARTZ:  The judge has ordered them to be paid as

18   of this order a month ago.

19             THE COURT:  Anything else?

20             MR. SWARTZ:  Now, if it is the court's view to send

21   them to Texas first to be paid, I am not going to oppose that,

22   but I come here now not as a claimant, as I was 19 months ago.

23   I come here as a judgment holder.  These are the two judgments.

24             THE COURT:  Right.

25             MR. SWARTZ:  But they are subject to a pending new

1    trial motion.

2         So while they say the judge says they are final,

3    arguably they are not final.

4         So, no, with that remark, you could order them paid

5    here or Judge Gold could, or if the transfer is not going to

6    delay the United States' payment, we could send them both and

7    send the whole $807,000.

8         THE COURT:  Right, except here is the interesting

9    thing, Mr. Swartz:  I am looking at docket entry 182 which is

10   an order entered by Judge Crane on September 19th, 2011, where

11   he says, "It is hereby ordered adjudged and decreed that Newton

12   B. Swartz" -- I assume that's you -- "individually and as

13   trustee for the Kemper Queen and Swartz Junior Trust, a Texas

14   trust, be awarded the remainder of the funds deposited into the

15   court's registry in this case."

16        Now, there is no money deposited into the registry of

17   the court in the Southern District of Texas, is there?

18        MR. SWARTZ:  No, Your Honor.

19        THE COURT:  Okay.

20        MR. SWARTZ:  That's clear.

21        THE COURT:  All right.

22        MR. SWARTZ:  So we would agree to the transfer if it

23   is done forthwith.

24        THE COURT:  Okay.  So really you don't object to an

25   order transferring the funds, do you?

1        MR. SWARTZ:  No, Your Honor.

2        THE COURT:  Okay.

3        MR. SWARTZ:  Provided it is done, as the Supreme Court

4   said 55 years ago, "With all deliberate speed."

5        THE COURT:  Brown versus Board of Education.

6        MR. SWARTZ:  Right.

7        THE COURT:  I understand.  All right.  Does anyone

8   else have an objection or a non-objection to an order

9   transferring the funds from the registry of this court to the

10  registry of the federal court in Texas?

11       MR. MARKS:  No objection to the 307 that the U.S.

12  Government is entitled to.

13       The only caveat to the remaining of the funds is there

14  is still a dispute, and to the extent that we are going to get

15  any relief from this court, if the Court has jurisdiction, as a

16  practical matter, it would be far easier to get an order here

17  for us not to have to file because of the same worry we have

18  about going to Judge Crane.

19       We don't want to voluntarily appear in Texas, so that

20  if we are going to get relief, the only way we can effectuate

21  it is if the monies are still here without taking some risk.

22       THE COURT:  Right.  But let me ask you this,

23  Mr. Marks:  If the actual case itself, the interpleader action

24  was, in fact, transferred, do you know of any authority,

25  statutory case law, or otherwise, that would support the notion

1    that the interpleader case can be transferred to another

2    district, but the very funds that created the interpleader

3    action remained behind?

4         MR. MARKS:  No, and I would concede that what Your

5    Honor read to us reminded me of what Judge Gold said specific

6    to that point.

7         I agree with you.  It certainly seemed to suggest that

8    he intended even sending it piecemeal.  So I agree with you.

9         I raise, however, having much more knowledge now of

10   the dangers of Texas litigation, that we are not going to be

11   able to go there without even, if it is a minute risk, and even

12   if the law is pretty clear, we are not, as a practical matter,

13   going to take that chance.

14        So if you could at least hold up the 500 until you

15   decide whether or not we are subjecting ourselves to

16   jurisdiction there, it would at least give us a possibility of

17   a remedy.

18        THE COURT:  Right.  So what I hear you saying is,

19   "Number 1, I object to transferring more than the 307,000.  My

20   preference is to have the remaining balance here, but,

21   candidly, I don't have any law to support that.  That is simply

22   my preference," right?  I mean as you boil it down.

23        MR. MARKS:  I guess you are right.  It doesn't sound

24   very compelling when you put it your way, but, yes.

25        THE COURT:  All right.

1          MR. MARKS:  That is accurate.

2          THE COURT:  All right.  I understand.  Now, the other

3   point is if we only sent back $307,000 and left the remaining

4   balance here, that would mean that every time somebody in Texas

5   wanted a small piece of the remaining balance, whether it is

6   5,000 or 15,000 or 50,000 or 200,000, then we would have

7   another motion here in this court because the money would be in

8   this registry, and there is this clerk versus clerk conflict,

9   and then this case would continue to live on here with ongoing

10  motions to disburse from the registry based on orders from the

11  Texas court.

12          MR. MARKS:  I have got a possible solution to that.

13  You could transfer the funds, which the transfer order shall

14  become effective as soon as the court resolves the pending

15  claim of Podhurst Orseck.

16          Then once our claim is resolved, and depending upon

17  whether you make a finding that is a charging lien, which has

18  priority over a judgment which isn't yet final, or those

19  decisions, at least as to our little piece, we have that

20  protection here, and then it automatically goes.  I think that

21  would resolve it for other people coming in.

22          THE COURT:  Sort of a transfer with a condition

23  subsequent.  Something like that.  All right.  Yes, sir.

24          MR. PHELAN:  Your Honor, on behalf of the receiver,

25  briefly on this point we would certainly agree that the

1    appropriate action by this court would be to transfer the

2    entire fund.

3              That is what Judge Gold anticipated at the time.  That

4    is what the case law discusses in terms of the effect of the

5    transfer; that the subsequent judge has authority to rule on

6    the case.

7              Prior orders, orders in the file that are there,

8    including in this case the orders that Judge Gold entered, just

9    simply become the law of the case.

10             We are not in state court.  The federal judge that's

11   in charge of this who is handling this case certainly has all

12   of the authority to view those orders, apply those orders and

13   enter sanctions and would have a lot more familiarity with

14   whether or not those orders have been violated; whether or not

15   they are entitled to attorneys' fees; what their efforts were

16   worth.  All of those issues are properly before the Texas

17   federal judge.

18             THE COURT:  All right.

19             MR. PHELAN:  So we believe that the entire matter has

20   already been transferred.  The ministerial functions sending

21   the funds has not been, and all of these other issues about

22   attorneys' fees, or whether these folks did something wrong, or

23   whatever in deposing Mr. Marks should be determined by the

24   federal judge in Texas without fear.

25             THE COURT:  Who represented you at your deposition,

1    Mr. Marks?  I am just curious.

2              MR. MARKS:  Only a fool for a client.

3              THE COURT:  Is that right?  Is that right?  Wow.  All

4    right.

5              MR. MARKS:  No.  Actually, I think I did have somebody

6    from my office.  I don't remember who.  My Texas lawyers were

7    there by phone.

8              THE COURT:  I see.

9              MR. MARKS:  So I was trying to be frugal.

10             THE COURT:  I understand.

11        Does anybody have any objection substantively to the

12   government's motion to disburse the funds, whether it is from

13   an order from this court when the money is still in the

14   registry, or an order from the Texas federal Judge if the funds

15   are transferred?

16        Does anybody substantively object to the government's

17   motion for disbursement?

18             MR. JOSEFSBERG:  We do not.

19             MR. PHELAN:  Unfortunately, Your Honor, I would have

20   to technically object to that, because it is our view that the

21   jurisdiction of this court ended with the transfer of the case.

22        The ministerial act of transferring the funds does not

23   provide additional jurisdiction.  So although it sounds like a

24   perfectly sound and good way to handle it and efficient, it is

25   our view that the proper legal method should be the funds are

1   transferred to the court in Texas.

2            THE COURT:  Right.

3            MR. PHELAN:  And have the federal judge there, who has

4   already entered his order --

5            THE COURT:  Right.

6            MR. PHELAN:  -- tell his clerk, "Disburse the funds to

7   the federal government."

8            THE COURT:  That's sort of what I meant.

9            MR. PHELAN:  Okay.

10            THE COURT:  In other words, if we carry out this chess

11   game 2 or 3 moves, let's just say the funds are transferred

12   from the registry of this court to the federal District Court

13   where the interpleader action has already been transferred, the

14   government's motion has already been filed there.

15            There is already an order saying, "These funds shall

16   be disbursed to the United States."

17            I take it at that point you are not going to object to

18   an order from the judge there?

19            MR. PHELAN:  Certainly not, Your Honor.

20            THE COURT:  All right.  Mr. Swartz, what about you?

21   Are you objecting?

22            MR. SWARTZ:  No, Your Honor.  May I be heard on one

23   matter?  You are not specifying the same vice we had 20 months

24   ago.

25            The Houston office is the Administrative Office for

1    the 6 divisions of the Southern District of Texas.

2         I know the other day we were in McAllen to get a court

3    order to pay funds, and they said it comes out of Houston,

4    which, of course, that's where my office is.  I have a

5    satellite office in McAllen, and I think you better have to

6    specify it because this case went to Houston, then to McAllen

7    because of Judge Gold's lack of referral to a specific

8    division.

9         Mr. Linder can correct me if I am wrong, but, of

10   course, he is in the Northern District in Dallas.  I think

11   administratively the funds are disbursed out of Houston for all

12   6, Laredo, Corpus Christi, Brownsville, Galveston and Houston.

13        THE COURT:  So your suggestion is that if this

14   District Court in the Southern District of Florida were to

15   enter an order administratively transferring the funds, that,

16   in an abundance of caution we should specify that the funds

17   should go to the specific division encompassing McAllen?

18        MR. SWARTZ:  Right.  Whether you choose McAllen or

19   Houston, if McAllen in turn sends it, the funds physically to

20   Houston, that's an internal administrative matter in the

21   Southern District.

22        THE COURT:  All right.

23        MR. SWARTZ:  But the last time it went to Houston

24   because Judge Gold didn't specify a particular division.

25   That's my only comment.  No, I do not.

1      THE COURT:  Does anybody else have any other

2   procedural suggestions to amplify Mr. Swartz' comment?

3      MR. LINDER:  Your Honor, not to be mean to Mr. Swartz,

4   but that is wrong.  You don't have to put the McAllen Division,

5   because if you put the McAllen Division and the Clerk of

6   Court's, when he contacts the Clerk of Courts, they are going

7   to tell him, "due to the size of the funds, send the funds to

8   the Clerk of Courts Houston office.

9      The order should be just stated to transfer the funds

10   from the registry to the Southern District of Texas Registry

11   because the Clerk OF Courts for the Southern District of Texas

12   actually sits in Houston.

13      The clerk that is in charge of the McAllen Division is

14   a deputy.  So you just have a different division.  So all of

15   the money is going to be disbursed out of Houston.

16      That's where they are going to do things, and I am

17   admitted to all of the districts in Texas.  So that's not an

18   issue, but that's the proper way to do it.

19      That's going to be the fastest way to do it because

20   when you get your order and you simply put the McAllen

21   Division, they are going to look at it, and then they are going

22   to have to contact the clerk in Houston and say, "Hey, what are

23   we doing with this order?"

24      So it would be much more efficient to do it right the

25   first time because you won't have three transfers of money.

1          THE COURT:  All right.  Now, what about Mr. Swartz'

2   motion to supplement or amend his claims here?

3          I notice, as I mentioned at the very beginning of the

4   hearing, this case here in this district is closed.

5          So what are your views, Mr. Swartz on how this court

6   could enter an order approving an amended claim or a

7   supplemental claim here when the case, number 1, has been

8   closed and, number 2, transferred to the Southern District of

9   Texas?  Please step up to the microphone.

10          MR. SWARTZ:  Well, Your Honor, I think that my

11   documents 181 and 182 that I have given you copies are

12   dispositive of that.

13          The court has already ruled on those, unless he grants

14   a new trial or a rule 30(b) -- they have moved under 59(e) and

15   60(b)(3), and he has not ruled finally on those, otherwise by

16   judgment or awarding all of the funds to me and in turn, 42

17   percent of those to Mr. Louis' client, which is a public record

18   in the court hearing there.

19          THE COURT:  You have lost me.  So are you saying that

20   you need to supplement or amend your claims here, or you do not

21   need to do that here?

22          MR. SWARTZ:  Your Honor, for the record, when we left

23   here in March of 2010, and Judge Gold transferred, I was a

24   claimant.  Now I am a judgment holder.

25          THE COURT:  Right.

1          MR. SWARTZ:  And that's what the supplemental and/or

2     amended pleading in so many pages of verbiage say, and to

3     update the proceedings, I didn't know if we were going from you

4     to Judge Gold or to the 11th Circuit here.

5          I didn't know what was going to happen here, so I

6     thought I would put it on the public record.

7          THE COURT:  All right.  So can we fairly describe your

8     motion to amend as something that was filed in an abundance of

9     caution, but probably is not necessarily, number 1, and number

10    2, probably -- I am sorry -- and number 2 would be procedurally

11    inappropriate, anyway, since the case is closed?

12         MR. SWARTZ:  Well, Your Honor, Judge Crane in the case

13    in Houston -- I mean in McAllen -- put in one of his entries

14    the case is closed.

15         It is obviously not closed because of these post

16    pending motions.  My filing here was in case we go to Judge

17    Gold and the 11th Circuit to let them know what has happened in

18    that year and a half since the case was closed, but not really

19    closed because we wouldn't be here today if it were closed.

20         THE COURT:  Do you have any authority to support your

21    notion that this court can entertain a motion to amend or

22    supplement a claim in a case that has already been closed and

23    transferred to another district court?

24         MR. SWARTZ:  I do not, and the court can refuse it,

25    deny the leave, which is ordinarily liberally granted.  We

1   cited many authorities for that general rule which Your Honor

2   is very familiar with.

3            THE COURT:  I am familiar with it, but I am not sure

4   if the rule says leave is so liberal that it can be granted in

5   a closed case.  I am not familiar with that law.

6            MR. SWARTZ:  And I did not brief it, Your Honor.

7   Either way, as long as it is part of the record.

8            THE COURT:  All right.  Well, you have certainly

9   engaged in, let's call it CYP.  Covering your position.

10           MR. SWARTZ:  Well, I would call it CYA.  It is called

11  various acronyms.

12           THE COURT:  Okay.

13           MR. SWARTZ:  Your Honor, can we make these orders, and

14  may I substitute a copy?  I think I gave you a copy of my notes

15  on the back.

16           THE COURT:  Sure.

17           MR. SWARTZ:  They can be filed in the case.

18           THE COURT:  Well, here is my suggestion:  If you want

19  to keep these as a matter of record, do a notice of filing in

20  this case.  No big deal.

21           It can be a one sentence submission.  Notice of filing

22  Exhibits A and B, and just file these.  Okay.  So I am going to

23  hand them back to you.

24           MR. SWARTZ:  Thank you.

25           THE COURT:  And that way that they will be in the

 1   court docket.

 2              MR. SWARTZ:  All right.  That solves the problem.

 3              THE COURT:  Okay.  Fair enough.  All right.

 4              So by next Wednesday we are going to have a briefing

 5   on the personal jurisdiction issue.

 6              You have already briefed the issue of, well, actually

 7   we didn't brief this issue.  I asked for a list of authorities,

 8   but I have to tell you, Mr. Marks, I am a little bit troubled

 9   by the notion that once a case is transferred, that portions of

10   it can linger on and remain, and I understand the history of

11   how you got to where you are.

12              I understand your concerns and the record does

13   unequivocably reflect your concern in front of Judge Gold that

14   you didn't want to go out to Texas; that you had jurisdictional

15   arguments.

16              I recognize that the order does not expressly state

17   reserving jurisdiction for fees and costs in this district.  It

18   just reserves the issue.

19              Would you like an opportunity to do some further

20   briefing on that thorny issue in addition to just submitting a

21   list of authorities?

22              MR. MARKS:  Thank you for offering, but, yes, we can

23   include it within the 10 pages that you gave us.

24              THE COURT:  All right.  Well, that's good to hear, and

25   I will make the same proposal to anyone else who is submitting

1   a memorandum, if you want to address those issues as well.  All

2   right.  Yes, sir?

3            MR. PHELAN:  Just a point of clarification, Your

4   Honor.  With regard to the issue --

5            THE COURT:  Speak into the microphone.

6            MR. PHELAN:  With regard to the issue that you have

7   requested for us to brief, as I understand it, the

8   jurisdictional issue is limited to simply whether or not the

9   Marks firm, or excuse me, the Podhurst firm can make --

10           THE COURT:  I am sure it is supposed to be the Marks

11  firm.

12           MR. PHELAN:  It is limited to the one, that very

13  narrow issue as to whether or not they can file or serve some

14  kind of, whether they can appear in Texas on a limited basis to

15  seek --

16           THE COURT:  Fees or costs.

17           MR. PHELAN:  -- disbursement of fees and costs.

18           THE COURT:  Or the show cause.

19           MR. PHELAN:  Or the show cause.

20           THE COURT:  Without risking, waiving their personal

21  jurisdiction position, correct.

22           MR. PHELAN:  I want a clarification because, of

23  course, we have raised and still feel very strongly about a

24  local lot of other in personam jurisdiction issues that are

25  lingering around this case.  By virtue of this memo, I am just

1    narrowly addressing that issue.

2            THE COURT:  Okay.

3            MR. PHELAN:  I don't want to go back and readdress it

4    all again.

5            THE COURT:  Right.  Right.  Right.  This is not

6    intended to be a fact intensive analysis of whether or not

7    there is either specific or general jurisdiction over the

8    Podhurst firm based on whatever activities they have engaged in

9    over the years in Texas.

10            It is not intended to be that kind of a memo.  It is

11   strictly a legal memo, almost in a vacuum, so to speak, on

12   whether or not that can be done procedurally.

13            All right.  Then while you are at it, deal with the

14   issue of whether or not the retention of the funds in this

15   court registry somehow changes the general rule that once a

16   case is transferred, it is transferred.  And if you think you

17   need some additional pages beyond 10, I am happy to give them

18   to you.  All right.  Good.  You are shaking your head.

19   Perfect.

20            MR. PHELAN:  No, I don't think so.  Your Honor, 10

21   pages sound like more than adequate for these two issues.

22            THE COURT:  All right.

23            MR. PHELAN:  And I was trying to address more of my

24   concerns as to this court's jurisdiction over the Texas

25   appointed receivers in this action that I am not addressing in

1    this memo.

2              THE COURT:  All right.

3              MR. PHELAN:  I don't care about their jurisdictional

4    issues.

5              THE COURT:  All right.  Any other issues that any of

6    the lawyers suggest that we discuss this afternoon in order to

7    bring things to a head?

8              MR. MARKS:  Not from the Podhurst Orseck firm.  Thank

9    you, Your Honor.

10             MR. PHELAN:  Not from the receivers, either, Your

11   Honor.

12             MR. LINDER:  Not from the United States, Your Honor.

13   I will suggest this, Your Honor:

14             If you would like me to draft the order, the order for

15   transfer, if you want to just direct me to do that, I can do

16   that in an e-mail.

17             THE COURT:  Well, actually here is probably --

18             MR. LINDER:  At any time I can do that.  I will find

19   out exactly how the clerks want it worded, and I can do that.

20             THE COURT:  Right.  Here is probably what is going to

21   happen, and I will tell you candidly what my current thinking

22   is on this.

23             However I decide this, it is going to be in the form

24   of a report and recommendation, as opposed to an order because

25   this procedural posture is, shall we say atypical, and Judge

1    Gold's order of reference simply says, "I am referring it to

2    Goodman."

3         It doesn't say for an R and R.  It doesn't say for an

4    order.  It just says for a reference, and so I am going to

5    exercise caution, and in an abundance of caution, I am going to

6    do a report and recommendation as opposed to an order, but let

7    me ask this question for the Texas lawyers.

8         Are any of you fluent in Spanish?  I ask the question

9    are you familiar with the phrase "Que Lio?"

10        MS. VELA:  Que Lio?

11        THE COURT:  Que Lio.  Que Lio means "what a mess."  So

12    as I go through the papers here, I am reminded of that phrase,

13    "Que Lio."  I am a sure there is a similar phrase we use in

14    Miami.

15        MR. MARKS:  Yiddish.

16        THE COURT:  Yiddish, probably.

17        MR. JOSEFSBERG:  Farblonjet.

18        THE COURT:  Yes, or --

19        MR. MARKS:  Ferkockteh.

20        THE COURT:  Fartoost.

21        MR. MARKS:  Fartoost.

22        THE COURT:  All right.  Great language, Yiddish.

23        In any event, thank you all for your argument, your

24    papers, your presence.  Happy Halloween to all.

25        Have a safe trip back to Texas and a safe trip back to

```
 1    the City National Bank building.

 2             All right.  Take care.  Thank you.  We will be in

 3    recess.

 4             MR. MARKS:  Thank you, Your Honor.

 5             MR. JOSEFSBERG:  Thank you, Judge.

 6             MR. PHELAN:  Thank you, Your Honor.

 7             MS. VELA:  Thank you, Your Honor.

 8             (Whereupon the proceedings were concluded)

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1

2

3                          C E R T I F I C A T E

4              I hereby certify that the foregoing is an accurate

5       transcription of proceedings in the above-entitled matter.

6

        NOVEMBER 6, 2011              S/JERALD M. MEYERS
7       _____             _____
            DATE                      JERALD M. MEYERS, RPR
8                .

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25